IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JACINTO RAMIREZ, LUIS MORALES, | § | |
| ORLANDO PIEDRA FLORES, AND | § | |
| SALVADOR LEON, On Behalf of | § | |
| Themselves and All Other Similarly | § | |
| Situated, | § | |
| | § | CIVIL ACTION NO. 4:18-cv-756-ALM |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | COLLECTIVE ACTION |
| LOAD TRAIL, LLC, | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFFS' SECOND AMENDED COMPLAINT

Plaintiffs, JACINTO RAMIREZ ("Ramirez"), LUIS MORALES ("Morales"), ORLANDO PIEDRA FLORES ("Flores"), and SALVADOR LEON ("Leon"), on behalf of themselves and all others similarly situated, (collectively, "Plaintiffs") file this First Amended Complaint against Defendant LOAD TRAIL, LLC ("Defendant") showing in support as follows:

## I.    NATURE OF THE CASE

1.    Defendant is in the trailer manufacturing business with a facility in Sumner, Texas located in Lamar County.

2.    Defendant employed Plaintiffs and the putative collective action members in connection with its business operations.

3.    Plaintiffs and the putative collective action members regularly worked in excess of 40 hours per workweek as employees of Defendant but were not paid all overtime premium compensation owed under the FLSA by Defendant.

## II.   THE PARTIES, JURISDICTION AND VENUE

4.     Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully in this section.

### A.  Plaintiff Jacinto Ramirez

5.     Ramirez is a natural person. He has standing to file this lawsuit.

6.     Ramirez is a former employee of Defendant with dates of employment being approximately 2004 to approximately May 8, 2017.

7.     During the relevant time period, Ramirez was employed by Defendant as a welder. Ramirez' job duties were to use welding tools and materials to fuse together goods and/or materials for Defendant.

8.     Ramirez was paid on a piece rate basis and/or hourly rate basis. Defendant unilaterally changed his method of pay at times of Defendant's choosing.

9.     In addition to receiving hourly and/or piece rate pay, Ramirez also received remuneration for performance-based bonuses.

10.     Ramirez regularly worked in excess of 40 hours per workweek, but was not paid all overtime premium compensation due for all hours worked over 40 in a workweek.

11.     Ramirez used a computer based system to "clock in" and "clock out' at the beginning and end of each shift. However, the hours purported to be worked on his pay stubs routinely did not reflect his actual hours worked nor did his pay always reflect all work he completed.

12.     On October 22, 2018 Ramirez filed a consent to be a party plaintiff to this FLSA action pursuant to 29 U.S.C. § 216(b). (ECF No. 1 (Exhibit A)).

B.  **Plaintiff Luis Morales**

13.    Morales is a natural person. He has standing to file this lawsuit.

14.    Morales is a former employee of Defendant with dates of employment being approximately 2014 to approximately 2017.

15.    During the relevant time period, Morales was employed by Defendant as a welder. Morales' job duties were to use welding tools and materials to fuse together goods and/or materials for Defendant.

16.    Morales was paid on a piece rate basis and/or hourly rate basis. Defendant unilaterally changed his method of pay at times of Defendant's choosing.

17.    In addition to receiving hourly and/or piece rate pay, Morales also received remuneration for performance-based bonuses.

18.    Morales regularly worked in excess of 40 hours per workweek, but was not paid all overtime premium compensation due for all hours worked over 40 in a workweek.

19.    Morales used a computer based system to "clock in" and "clock out' at the beginning and end of each shift. However, the hours purported to be worked on his pay stubs routinely did not reflect his actual hours worked nor did his pay always reflect all work he completed.

20.    By filing this lawsuit and complaint, Morales consents to be a party plaintiff to this FLSA action pursuant to 29 U.S.C. § 216(b). (ECF No. 7 (Exhibit A)).

C.  **Plaintiff Orlando Piedra Flores**

21.    Flores is a natural person. He has standing to file this lawsuit.

22.    Flores is a former employee of Defendant with dates of employment being approximately 2011 to approximately mid-2018.

23.     During the relevant time period Flores was employed to work primarily in the warehouse working with the inventory contained in the warehouse. Flores' job duties included moving inventory about the warehouse and performing inventory control tasks relative to Defendant's business needs.

24.     During the relevant time period Flores was regularly paid on an hourly basis.

25.     Upon information and belief, in addition to receiving hourly pay Flores also received remuneration for performance-based bonuses.

26.     Flores regularly worked in excess of 40 hours per workweek, but was not paid all overtime premium compensation due for all hours worked over 40 in a workweek.

27.     Flores used a computer based system to "clock in" and "clock out' at the beginning and end of each shift. However, the hours purported to be worked on his pay stubs routinely did not reflect his actual hours worked.

28.     Likewise, Flores often worked through lunch but was not compensated for this time.

29.     By filing this lawsuit and complaint, Flores consents to be a party plaintiff to this FLSA action pursuant to 29 U.S.C. § 216(b). (ECF No. 7 (Exhibit B)).

**D.  Plaintiff Salvador Leon**

30.     Leon is a natural person. He has standing to file this lawsuit.

31.     Leon is a former employee of Defendant with dates of employment being 2011 to approximately August 2018.

32.     From 2009 to 2016 Leon was employed as a welder. When Leon was employed by Defendant as a welder, job duties were to use welding tools and materials to fuse together goods and/or materials for Defendant.

33.     Leon was paid on a piece rate basis and/or hourly rate basis when employed by Defendant as a welder. Defendant unilaterally changed his method of pay at times of Defendant's choosing.

34.     In approximately 2017, Leon began working as an assistant to supervisors. Leon would assistant supervisors by confirming attendance and completing reports.

35.     As an assistant, Leon did not have a primary job duty of management of Defendant.

36.     As an assistant, Leon did not have a primary job duty of management of a customarily recognized department and/or subdivision of Defendant.

37.     As an assistant, Leon did not have authority to hire, fire, or set pay rates of pay for Defendant's employees.

38.     As an assistant, Leon did not make suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees of Defendant that were given particular weight by Defendant.

39.     As an assistant, Leon did not have discretion and independent judgment on matters of significance.

40.     As an assistant, Leon was regularly paid on a salary basis.

41.     Upon information and belief, in addition to receiving the pay referenced above as a welder and assistant, Leon also received remuneration for performance-based bonuses.

42.     Leon regularly worked in excess of 40 hours per workweek, but was not paid all overtime premium compensation due for all hours worked over 40 in a workweek.

43.     Leon used a computer based system to "clock in" and "clock out' at the beginning and end of each shift. However, the hours purported to be worked on his pay stubs routinely did

not reflect his actual hours worked nor, as a welder, did his pay always reflect all work he completed.

44.     By filing this lawsuit and complaint, Leon consents to be a party plaintiff to this FLSA action pursuant to 29 U.S.C. § 216(b). (ECF No. 7 (Exhibit C)).

**E.  FLSA Collective Action Members**

45.     The putative collective action members are all current and/or former employees of Defendant who work/worked for Defendant in the manufacturing of trailers and who like Plaintiffs, are/were not paid time and one-half their respective regular rates of pay for all hours worked over forty in each and every seven day workweek. While their precise job duties and payment methods might vary somewhat, those differences do not matter for the purposes of determining their entitlement to overtime pay. Plaintiffs and the putative collective action members, regardless of their respective methods of pay, which routinely changed at Defendant's discretion, were subjected to Defendant's company-wide policy, practice, and/or plan to not accurately record all daily and weekly hours worked, not accurately calculate their respective regular rates of pay, and not pay them time and one-half their respective regular rates of pay for all hours worked over 40 in a workweek. The putative collective action members are similarly situated to the Plaintiff(s), and to one another, within the meaning of Section 216(b) of the FLSA.

46.     In the event the Court determines that Defendant's routine unilateral changes to Plaintiffs' and the putative collective action members' respective methods of pay and other relevant facts does not support one collective action class, then Plaintiffs seek to establish three classes or subclasses (hereafter subclass) for the putative collective action members based on their methods of pay and corresponding job requirements.

47.     All of the putative collective action members in each sub-class are similarly situated to the respective named Plaintiff(s), and to one another, within the meaning of Section 216(b) of the FLSA.

48.     The relevant time period for the claims of the putative collective action members is three years preceding the date this lawsuit was filed and forward.

49.     Plaintiffs reserve the right to redefine the class, request more than one class, and/or request additional sub-classes relative to any motion for conditional certification filed in this lawsuit.

**1.     Pay for Performance Subclass**

50.     The putative collective action members in Pay for Performance Subclass are all current and/or former employees of Defendant who worked as (1) non-supervisor employees (2) who work(ed) in the fabrication department, welding department, finishing department, or in the warehouse handling inventory (3) who perform(ed) manual labor tasks (4) that are/were in a "pay for performance" position (aka "paid by production" or "piece rate"), (5) who are/were employed within the relevant statutory period (6) and work(ed) in excess of 40 hours in a given workweek, but were not paid time and one-half their regular rate of pay for all hours worked over 40 in each such workweek.

51.     While their precise job duties might vary somewhat (i.e. welders, painters, material cutters, robot operators), those differences do not matter for the purposes of determining their entitlement to overtime pay. Because Defendants did not pay all overtime premium compensation to its pay for performance employees who routinely worked in excess of forty hours per workweek, Plaintiffs Ramirez, Morales, Leon (when he was a welder), and the pay for performance putative

collective action members are all similarly situated within the meaning of Section 216(b) of the FLSA.

### 2.    Non-Pay for Performance Subclass

52.    The putative collective action members in Non-Pay for Performance Subclass are all current and/or former employees of Defendants who, like Plaintiff Flores, were (1) non-supervisor employees (2) who work(ed) in the fabrication department, welding department, finishing department, or in the warehouse handling inventory (3) who perform(ed) manual labor tasks, including employees commonly known as lead hands, (4) that were paid on an hourly basis (5) that are/were not in "pay for performance" positions (aka "pay for production" or "piece rate") (6) who are/were employed within the relevant statutory period (7) and worked in excess of 40 hours in a given workweek, but were not paid time and one-half their regular rate of pay for all hours worked over 40 in each such workweek.

53.    While their precise job duties might vary somewhat (i.e. forklift operators, shop cleaners, inventory control), those differences do not matter for the purposes of determining their entitlement to overtime pay. Because Defendants did not pay all overtime premium compensation to non-pay for performance employees who routinely worked in excess of forty hours per workweek, Plaintiff Flores and the non-pay for performance putative collective action members are all similarly situated within the meaning of Section 216(b) of the FLSA.

### 3.    Salaried Assistants Subclass

54.    The putative collective action members of the Assistant Sub-Class are all current and/or former employees of Defendants who work/worked for Defendants as assistants to supervisors who like Plaintiff Leon (when he was an assistant), (1) primary job duties were to assist the supervisors in the fabrication department, finishing department, welding department or

in the warehouse handling inventory, commonly known as lead hands, (2) that were paid on a salary basis (3) who were employed within the relevant statutory period (4) and worked in excess of 40 hours in a given workweek, but were not paid time and one-half their regular rate of pay for all hours worked over 40 in each such workweek.

55.     While their precise job duties might vary somewhat as assistants, those differences do not matter for the purposes of determining their entitlement to overtime pay. Because Defendant did not pay all overtime premium compensation to its assistants who routinely worked in excess of 40 hours per workweek, Plaintiff Leon and the assistant putative collective action members are all similarly situated within the meaning of Section 216(b) of the FLSA.

**F.  Defendant Load Trail, LLC**

56.     Defendant is a domestic limited liability company.

57.     During all times relevant to this lawsuit, Defendant has done business in the State of Texas.

58.     At all times relevant to this lawsuit, Defendant is and has been an "enterprise engaged in commerce" as defined by the FLSA.

59.     At all times relevant to this lawsuit, Defendant employed, and continues to employ, two or more employees.

60.     At all times relevant to this lawsuit, Defendant employed two or more employees who engaged in commerce and/or who handled, sold, and/or otherwise worked on goods and/or materials that have been moved in and/or produced for commerce by any person.

61.     For example, Defendant employed two or more employees who regularly handled, sold, and/or otherwise worked on goods and/or materials in their daily work that were moved in and/or produced for commerce. Examples of such goods and/or materials include trailers, trailer

components/parts, welding equipment, welding supplies, office supplies, and other goods and/or materials used in connection with Defendant's business operations.

62.     On information and belief, at all times relevant to this lawsuit, Defendant has had annual gross volume of sales made or business done in excess of $500,000.

63.     Defendant's principal place of business is 220 FM 2216, Sumner, Texas 75486.

64.     Defendant may be served with summons through its registered agent, Mr. Cornelio D. Thiessen at 220 FM 2216, Sumner, Texas 75486.

**G.  Jurisdiction and Venue**

65.     The Court has personal jurisdiction over Defendant based on both general and specific jurisdiction.

66.     During all times relevant to this lawsuit, Defendant has done business in the State of Texas and continues to do business in the State of Texas.

67.     The Court has subject matter jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. § 1331, because Plaintiffs base their claims on federal law, namely the FLSA.

68.     Venue is proper in the United States District Court for the Eastern District of Texas because a substantial part of the events giving rise to the claims in this lawsuit occurred in this judicial district. As previously identified, Defendant's principal place of business is in this District. Additionally, Defendant conducts/conducted substantial business operations in this District that involved Plaintiffs and the issues made the subject matter of this lawsuit.

69.     Venue is proper in the Sherman Division of the United States District Court for the Eastern District of Texas because, as previously identified, Defendant's principal place of business

is in this Division. Additionally, Defendant conducts/conducted substantial business operations in this Division that involved Plaintiffs and the issues made the subject matter of this lawsuit.

### III.   FACTUAL BACKGROUND

70.   Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully in this section.

71.   Defendant is in the business of trailer manufacturing. Trailers manufactured by Defendant are sold to the general public in Texas and states other than Texas.

72.   Defendant's trailer manufacturing operations are located in or around Sumner, Texas.

73.   Plaintiffs were employees of Defendant who worked for Defendant in connection with the manufacturing of trailers sold by Defendant.

74.   Plaintiffs generally worked within the fabrication, welding, and finishing departments at Load Trail. Plaintiffs also worked in the warehouse at Load Trail moving inventory about the warehouse and performing tasks of inventory control.

75.   At various times, Plaintiffs were paid in accordance with one of three pay schemes (1) piece rate and/or hourly pay, (2) hourly pay, and/or (3) salary pay.

76.   Defendant changed Plaintiffs methods of pay at its discretion.

77.   In addition to their weekly pay, Plaintiffs received additional remuneration in the form of performance bonuses.

78.   Plaintiffs were occasionally paid overtime premium for some hours worked over forty. However, Plaintiffs were regularly not paid time and one-half their respective regular rates of pay for all hours worked over 40 in a workweek. Defendant did not accurately record or pay all hours worked per workday and workweek for Plaintiffs.

79.     When Plaintiffs were paid on a piece rate basis, Defendant should have calculated their respective regular rates of pay by all productive hours worked up to 40 in a workweek and paid time and one-half that regular rate of pay for all overtime hours worked in that workweek. However, Defendant failed to do so.

80.     Defendant failed to include all remuneration required by the FLSA in calculating Plaintiffs' respective regular rates of pay. This resulted in Plaintiffs not being paid all overtime compensation owed by Defendant.

81.     Defendant did not maintain or keep a record of all hours worked by Plaintiffs for Defendant per workday.

82.     Defendant did not maintain or keep a record of the all hours worked by Plaintiffs for Defendant for each and every seven day workweek.

83.     Defendant did not maintain or keep all of the data required by 29 C.F.R. § 516.2(a).

84.     During the time period of three years pre-dating the filing of this lawsuit and forward, Defendant employed, and continues to employ, numerous other workers with substantially similar job requirements as Plaintiffs who were paid with substantially similar methods of pay as Plaintiffs and are/were not paid time and one-half their respective regular rates of pay for all hours worked over 40 in each seven day workweek.

## IV.     CONTROLLING LEGAL RULES

85.     The FLSA generally requires that "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his

employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

86.     Defendant is and was required to pay Plaintiffs time and one-half their regular rates of pay for all hours worked over 40 in each relevant seven day workweek. 29 U.S.C. § 207(a)(1).

87.     The "regular rate" includes "all remuneration for employment paid to, or on behalf of, the employee." 29 U.S.C. § 207(e). With a few limited exceptions, all remuneration given to an employee must be included in the employee's regular rate calculation. 29 U.S.C. § 207(e); 29 C.F.R. § 778.108; *accord Allen v. Board of Pub. Educ. For Bibb Cty.*, 495 F. 3d 1306, 1311 (11th Cir. 2007); *see also Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903, 927 (E.D. La. 2009).

88.     The regular rate of pay for piece rate workers, such as Plaintiffs who were paid on a piece rate, should be calculated by dividing all piece rate pay received in a workweek by all corresponding productive hours worked in a workweek up to 40. 29 C.F.R. § 778.318(b). The piece rate paid employee is then due time and one-half that regular rate of pay for all hours, including productive and non-productive, worked over 40 in that workweek. *Id.*

89.     Failing to pay the required overtime premium for hours worked over 40 in a workweek is a violation of the FLSA. 29 U.S.C. § 216.

90.      "Employ" includes to suffer or permit work. 29 U.S.C. § 203(g).

91.     "[I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so." 29 C.F.R. § 785.13; *accord Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995) (same).

92.     Federal law requires employers to make and keep accurate and detailed payroll data for certain employees. 29 U.S.C. § 211(c); 29 C.F.R. § 516.2(a). Amongst other things, the regulations require employers to make and keep payroll records showing data such as the employee's name, social security number, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime pay is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period and date of payment and pay period covered by the payment, and records of remedial payments. 29 C.F.R. § 516.2(a)&(b). Employers are required to maintain the foregoing data for a minimum of three years. 29 C.F.R. § 516.5.

93.      "Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

94.     "The Court…shall, in addition to any judgment awarded to the [prevailing] plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

95.     The FLSA provides for a two year statute of limitations for violations of the statute. 29 U.S.C. § 255(a). However, that time period may be extended to three years if the employer's conduct was in willful violation of the law. *Id. See also*, *Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 356 (5th Cir. 1990).

# V.    PLAINTIFFS' CLAIMS

96.    Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully in this section.

97.    All conditions precedent to this suit, if any, have been fulfilled.

98.    This action is authorized and instituted pursuant to the FLSA. 29 U.S.C. §§ 201, *et seq.*

99.    At times relevant, Plaintiffs were employees of Defendant pursuant to the FLSA. 29 U.S.C. § 203(e).

100.    At all material times, Defendant is and has been an eligible and covered employer pursuant to the FLSA. 29 U.S.C. § 203(d).

101.    At all material times, Defendant is and has been an "enterprise engaged in commerce" as that phrase is used in connection with the FLSA. 29 U.S.C. § 203(s)(1)(A).

102.    Defendant failed to pay Plaintiffs overtime premium compensation at one and one-half times their respective regular rates of pay for all hours worked over 40 in each and every seven-day workweek during their employment with Defendant.

103.    Defendant's failure to pay Plaintiffs all overtime premium compensation owed is a violation of the FLSA. 29 U.S.C. § 207(a)(1); 29 U.S.C. § 216(b).

104.    Plaintiffs worked with many other individuals who performed the same or substantially similar job duties as Plaintiffs for Defendant and who like Plaintiffs, were paid on a substantially similar basis. Regardless of the method of pay and exact job duties, Plaintiffs and those similarly situated regularly worked more than 40 hours per seven day workweek for Defendant, but were not paid time and one-half their respective regular rates of pay for all hours worked over 40 in any workweek during their employment with Defendant.

105.    Defendant did not maintain an accurate number of the daily and weekly hours worked by Plaintiffs in addition to all other data required by 29 C.F.R. § 516.2(a).

106.    At all times relevant, and on information and belief, Defendant has been aware of the overtime wage requirements of the FLSA for Plaintiffs and other similarly situated employees.

107.    Defendant's violations of the FLSA are willful within the meaning of 29 U.S.C. § 255(a). For example, at all material times, Defendant was aware that Plaintiffs and the putative collective action members regularly worked in excess of 40 hours per seven day workweek, but were not paid time and one-half their respective regular rates of pay for all hours worked over 40 in each and every such workweek. Furthermore, Defendant failed to make and keep an accurate record of the daily and weekly hours worked by Plaintiffs and the putative collective action members which constitutes a willful violation of the FLSA.

108.    Plaintiffs, on behalf of themselves and all others similarly situated, seek all damages available under the FLSA, including back wages, liquidated damages, legal fees, costs, and post-judgment interest. The relevant time period for the FLSA claims in this lawsuit is three years preceding the date it was filed and forward.

## VI.     COLLECTIVE ACTION ALLEGATIONS

109.    Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully in this section.

110.    Where, as here, the employer's actions or policies were effectuated on a companywide basis, notice may be sent to all similarly situated persons on a companywide basis. *See Tice v. AOC Senior Home Health Corp.*, 826 f. Supp. 2d 990 (E.D. Tex. 2011) (certifying class of similarly situated group on a companywide basis).

111.    Plaintiffs seek to represent a collective action under 29 U.S.C. § 216(b) on behalf of themselves and all current and/or former employees of Defendant who, like Plaintiffs, work/worked for Defendant in its trailer manufacturing business who are/were paid an hourly rate, piece rate, combination of hourly rate and piece-rate, or on a salary basis and like Plaintiffs, are/were not paid time and one-half their respective regular rates of pay for all hours worked over 40 in each and every seven day workweek. While their precise job requirements and payment methods might vary somewhat, those differences do not matter for the purposes of determining their entitlement to overtime pay. Plaintiffs and the putative collective action members, regardless of their respective methods of pay, which routinely changed at Defendant's discretion, were subjected to Defendant's company-wide policy, practice, and/or plan to not accurately record all daily and weekly hours worked and pay them for all hours worked, not accurately calculate their respective regular rates of pay, and not pay them time and one-half their respective regular rates of pay for all hours worked over 40 in a workweek. The putative collective action members are similarly situated to the Plaintiff(s), and to one another, within the meaning of Section 216(b) of the FLSA.

112.    In the event the Court determines that Defendant's routine unilateral changes to Plaintiffs' and the putative collective action members' respective methods of pay and other relevant facts does not support one collective action class, then Plaintiffs seek to establish the three classes or sub-classes (hereafter sub-class) for the putative collective action members consisting of (a) Pay for Performance Workers (b) Non-Pay for Performance Workers and (c) Salaried Assistants as identified in Section II.E.1-3 above.

113.    The relevant time period for this collective action is three years preceding the date this lawsuit was filed and forward, or such other time period deemed appropriate by the Court.

114.     Plaintiffs reserve the right to establish additional sub-classes and/or modify class notice language as appropriate in any collective action certification motion, order from the Court, or other proceeding.

115.     Plaintiffs further reserve the right to amend the definition of the putative collective action class, or sub-classes therein, if discovery and further investigation reveal that the putative class should be expanded or otherwise modified.

## VII.   DAMAGES AND PRAYER

116.     Plaintiffs ask that the Court issue a summons for Defendant to appear and answer, and that Plaintiffs and FLSA collective action members be awarded a judgment against Defendant or order(s) from the Court for the following:

a)      An order conditionally certifying this case as a FLSA collective action (or sub-class collective actions as deemed appropriate by the Court) and requiring notice to be issued to all putative collective action members;

b)      All damages allowed by the FLSA for Plaintiffs and the FLSA collective action members including back overtime wages and liquidated damages in an amount equal to same;

c)      Legal fees;

d)      Costs;

e)      Post-judgment interest; and

f)      All other relief to which Plaintiffs and/or the FLSA collective action members are entitled as shown by the facts in this lawsuit.

Dated: June 27, 2019.

[Signature block follows]

*Plaintiffs' Second Amended Complaint – Pg. 18*

Respectfully submitted,

By:     <u>s/Rebecca Currier</u>
            Rebecca Currier, *with permission*
            rcurrier@baronbudd.com
            Allen R. Vaught
            Lead Counsel
            TX Bar No. 24004966
            avaught@baronbudd.com
            TX Bar No. 24074098
            Baron & Budd, P.C.
            3102 Oak Lawn Avenue, Suite 1100
            Dallas, Texas 75219
            (214) 521-3605 – Telephone
            (214) 520-1181 – Facsimile

            ATTORNEYS FOR PLAINTIFFS