**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **JACINTO RAMIREZ, LUIS MORALES, ORLANDO PIEDRA FLORES, AND SALVADOR LEON, On Behalf of Themselves and All Other Similarly Situated,** | § § § § § § | |
| | § | **CIVIL ACTION No. 4:18-CV-00756-ALM** |
| **Plaintiffs,** | § | |
| **v.** | § | |
| | § | |
| **LOAD TRAIL, LLC,** | § | |
| | § | |
| **Defendant.** | § | |

**DEFENDANT LOAD TRAIL, LLC'S RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL CERTIFICATION**

RUTH ANN DANIELS
Texas Bar No. 15109200
rdaniels@grayreed.com
Jacob A. LEWIS
Texas Bar No. 24087924
jlewis@grayreed.com
GRAY REED & MCGRAW LLP
4600 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201
(214) 954-4135 - Telephone
(214) 953-1332 – Facsimile

**ATTORNEYS FOR DEFENDANT
LOAD TRAIL, LLC**

# TABLE OF CONTENTS

I.    Summary ........................................................................................................................... 1

II.   Procedural History .......................................................................................................... 2

III.  Standard of Review .......................................................................................................... 2

IV.   Argument and Authorities ............................................................................................... 4

    A.    Plaintiffs' Motion Should Be Denied Because Plaintiffs Have Failed to Show that
          Plaintiffs and the Potential Class Members Are Similarly Situated. .................................. 4

        1.  Plaintiffs Have Failed to Show that Plaintiffs and the Potential Class Members Are
            Similarly Situated as to Job Duties. ............................................................................. 4

        2.  Plaintiffs Have Failed to Show that Plaintiffs and the Potential Class Members Are
            Similarly Situated as to Payment Provisions. .............................................................. 5

    B.    Plaintiffs' Motion Should Be Denied Because Plaintiffs Have Failed to Show that
          Plaintiffs and the Potential Class Members Were the Victims of a Single Decision,
          Policy, or Plan. ................................................................................................................. 7

    C.    Plaintiffs' Proposed Order and Class Notice Are Deficient and Improper...................... 10

    D.    Plaintiffs' Proposed Consent to Become Party Plaintiff Is Improper. ............................. 12

V.    Conclusion .................................................................................................................... 12

CERTIFICATE OF SERVICE ................................................................................................. 14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aguirre v. SBC Communications, Inc.*,
  No. H-05-03198, 2006 WL 964554 (S.D. Tex. April 11, 2006) ...............................................4

*Allen v. McWane, Inc.*,
  No. 2:06-CV-00158, 2006 WL 3246531 (E.D. Tex. Nov. 7, 2006)........................................3

*Hickson v. U.S. Postal Serv.*,
  No. 5:09-CV-00083, 2010 WL 3835887 (E.D. Tex. July 22, 2010) .......................3, 7, 8, 9, 10

*Hoffman-La Roche Inc. v. Sperling*,
  493 U.S. 165 (1989)...............................................................................................................2, 10

*Lusardi v. Xerox Corp.*,
  118 F.R.D. 351 (D.N.J. 1987)...................................................................................................3

*Ratliff v. Pason Sys. USA Corp.*,
  196 F. Supp. 3d 699 (S.D. Tex. 2016) ...................................................................................12

*Reneau v. Spur 248 Steak, LLC*,
  No. 6:16-CV-01126, 2017 WL 3124143 (E.D. Tex. July 24, 2017) ........................................4

*Reyes v. Bona 1372, Inc.*,
  No. 1:17-CV-00016, 2017 WL 5148367 (E.D. Tex. Oct. 17, 2017) ......................................11

*Ryan v. Staff Care, Inc.*,
  497 F. Supp. 2d 820 (N.D. Tex. 2007) ...................................................................................4

*Tice v. AOC Senior Home Health Corp.*,
  826 F. Supp. 2d 990 (E.D. Tex. 2011)...................................................................................3

*Tolentino v. C & J Spec-Rent Servs. Inc.*,
  716 F. Supp. 2d 642 (S.D. Tex. 2010) ......................................................................3, 10, 11

**Statutes**

Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* ...........................1, 2, 3, 8, 9, 10, 12, 13

Defendant Load Trail, LLC files this Response in Opposition to Plaintiff's Motion for Conditional Certification and, in support thereof, would respectfully show unto the Court as follows:

## I.    SUMMARY

Plaintiffs Jacinto Ramirez, Luis Morales, Orlando Piedra Flores, and Salvador Leon (Plaintiffs) seek to represent a class of employees of Defendant Load Trail, LLC (Defendant) whom they admit had widely varying job duties across four different departments and were paid by one or more of three different pay methods. Although Plaintiffs make a desperate attempt to overcome these fatal obstacles to certification by classifying all of the job duties as "manual labor tasks" and creating payment method subclasses, it only serves to acknowledge and emphasize that Plaintiffs and the potential class members are not similarly situated as to either job duties or pay provisions, and accordingly, the collective action cannot be conditionally certified.

Moreover, Plaintiffs allege that they and the potential class members were each subject to one or more of at least four separate practices which violated the FLSA. As such, Plaintiffs have failed to identify a *single* policy or practice that binds the Plaintiffs and the potential class members together, which is required for conditional class certification. Given the potential for—and clear existence of—the extraordinary variety of experiences among Plaintiffs and the potential class members and the need for highly individualized inquiries into each potential plaintiff to determine which of the four practices apply to them, collective action treatment is wholly inappropriate.

Additionally, the proposed order, notice, and consent Plaintiffs request are deficient and improper. The notice improperly informs potential class members that they must contact and be represented by Plaintiffs' counsel in order to opt-in. It also requires potential class members to send their opt-in consents to Plaintiffs' counsel, rather than the Court, and it fails to notify potential class members that they may be required to participate in discovery. Further, the order requires

1

Defendant to produce—on an unreasonable seven-day timeline—information concerning each potential class member that is unnecessary for the issuance of notice and invades the privacy of Defendant's current and former employees, including a request for phone numbers, Social Security numbers, and dates of birth. Finally, the proposed consent does not allow potential class members to be represented by a counsel of their choosing, but instead, requires potential class members to be represented by Plaintiffs' counsel.

## II.    PROCEDURAL HISTORY

Plaintiff Jacinto Ramirez filed his Original Complaint against Defendant Load Trail, LLC on October 22, 2018, on behalf of himself and other similarly situated individuals, alleging violations of the Fair Labor Standards Act (FLSA). (*See* Dkt. 1). On November 15, 2018, Plaintiffs Luis Morales, Orlando Piedra Flores, and Salvador Leon joined as named plaintiffs and, along with Plaintiff Ramirez, filed their First Amended Complaint. (*See* Dkt. 7). Defendant filed its Answer on December 17, 2018 (*see* Dkt. 19), and Plaintiffs filed their Second Amended Complaint on June 27, 2019. (*See* Dkt. 40). The parties have conducted limited written discovery, and no depositions have been taken. Plaintiffs filed their Opposed Motion to Conditionally Certify a Collective Action and to Issue Notice (Plaintiffs' Motion) on July 12, 2019. (*See* Dkt. 40).

## III.    STANDARD OF REVIEW

Section 216(b) of the FLSA authorizes "any one or more employees to maintain suit for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). However, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party." *Id.* While the FLSA does not specifically prescribe the collective action certification process, courts "have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989). However, "[t]he power to authorize notice must be exercised

2

with discretion and only in appropriate cases." *Hickson v. U.S. Postal Serv.*, No. 5:09-CV-00083, 2010 WL 3835887, at *7 (E.D. Tex. July 22, 2010), adopted, 2010 WL 3835885 (E.D. Tex. Sept. 28, 2010).

To facilitate discretionary notice in FLSA cases, this Court has followed the two-step process set forth in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987). *See Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 994 (E.D. Tex. 2011) ("The *Lusardi* two-stage approach is the prevailing standard among federal courts and is the standard most frequently used by this court." (citations omitted)).   Under *Lusardi*, the court proceeds in two stages: (1) the notice stage; and (2) the merits stage. *Id.* At the notice stage, the Court must decide whether to conditionally certify the collective action and issue notice to potential opt-in class members. *Id.* Once conditionally certified, the case moves on to the merits stage, where the Court may elect "to decertify the collective action upon a showing that the case lacks merit for collective action." *Id.* at 994-95 (quotation marks omitted).

While the standard for initial certification at the notice stage is lenient, Plaintiffs must provide "substantial allegations that the putative class members were victims of a single decision, policy or plan," and the Court must "satisfy itself that the potential plaintiffs are similarly situated with respect to their job requirements and pay provisions." *Id.* at 995. Thus, to conditionally certify a collective action, the Court must "conclude[] that there is 'some factual nexus which binds the named plaintiffs and potential class members together as victims of a particular alleged [policy or practice].'" *Allen v. McWane, Inc.*, No. 2:06-CV-00158, 2006 WL 3246531, at *2 (E.D. Tex. Nov. 7, 2006) (quoting *Villatoro v. Kim Son Restaurant, L.P.*, 286 F. Supp. 2d 807, 810 (S.D. Tex. 2003)) (brackets in original); *see also Tolentino v. C & J Spec-Rent Servs. Inc.*, 716 F. Supp. 2d 642, 647 (S.D. Tex. 2010) ("A factual basis for the allegations must be presented, and there must

3

be a showing of some identifiable facts or legal nexus that binds the claims so that hearing the cases together promotes judicial efficiency." (citations omitted)). Indeed, the potential class members must be "similarly situated in terms of job requirements and similarly situated in terms of payment provisions." *Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 825 (N.D. Tex. 2007). Failure to make a factual showing that the potential class members are not similarly situated as to both job requirements and payment provisions defeats a plaintiff's motion for conditional class certification. *See Reneau v. Spur 248 Steak, LLC*, No. 6:16-CV-01126, 2017 WL 3124143, at *1 (E.D. Tex. July 24, 2017).

## IV.    ARGUMENT AND AUTHORITIES

### A.  Plaintiffs' Motion Should Be Denied Because Plaintiffs Have Failed to Show that Plaintiffs and the Potential Class Members Are Similarly Situated.

Plaintiffs' allegation that they and the members of the proposed collective action are similarly situated fails because, as Plaintiffs admit in their Motion, the job duties and payment provisions are significantly varied and would necessarily require individual inquiries that are inappropriate for collective action litigation. Courts throughout the Fifth Circuit have routinely held that, if determining whether potential plaintiffs are similarly situated "would require a fact-specific and individualized inquiry into each employee's daily job duties," then the collective action plaintiff has not met the burden of showing that the potential class members are "similarly situated" for purposes of conditional certification. *Aguirre v. SBC Communications, Inc.*, No. H-05-03198, 2006 WL 964554, at *7 (S.D. Tex. April 11, 2006).

### 1.  Plaintiffs Have Failed to Show that Plaintiffs and the Potential Class Members Are Similarly Situated as to Job Duties.

Plaintiffs can only meet their burden for conditional certification by showing that they and the potential class members are similarly situated by both job requirements ***and*** payment provisions. *See Reneau*, at 2017 WL 3124143, at *1. Yet Plaintiffs readily admit that the potential class

4

members had a wide variety of positions with both varied job requirements and pay methods. Plaintiffs note that they "worked in the fabrication department, welding department, finishing department, and also in the warehouse handling materials." (Dkt. 40 at 3). Plaintiffs then proceed to explain precisely how their job duties substantially varied by department:

> Plaintiffs working in the fabrication department cut and bent the raw materials to required specification for welding. Plaintiffs working in the welding department fused the fabricated materials together to build the trailer chassis. Plaintiffs working in the finishing department performed tasks such as wiring, axle/flooring installation, sandblasting, and painting. Plaintiffs working in the warehouse transported inventory and performed inventory control tasks.

(Dkt. 40 at 3). Plaintiffs further provide that even job duties within the same department could significantly vary, noting that "within each department, Load Trail assigned some Plaintiffs tasks to assist a department supervisor such as starting up the machines, replacing broken tools, and retrieving needed materials." (Dkt. 40 at 3-4). Thus, Plaintiffs themselves make a compelling argument that they and the potential class members are not similarly situated. To hold otherwise would require the conclusion that bending and cutting raw materials is similar to painting, which is, in turn, similar to installing wiring in a trailer, all of which are similar to inventory control. These are clearly disparate job requirements, and Plaintiffs cannot sweep away the fatal dissimilarities by lumping them together as "manual labor tasks." (*See, e.g.*, Dkt. 40 at 12). As such, the Court should deny Plaintiffs' request to conditionally certify the collective action.

**2. Plaintiffs Have Failed to Show that Plaintiffs and the Potential Class Members Are Similarly Situated as to Payment Provisions.**

Even if the Court should determine that the job duties of Plaintiffs and the potential class members were, in fact, sufficiently similar, Plaintiffs have completely abandoned any argument that the payment provisions of each Plaintiff and potential class member are similar. As Plaintiffs note, they and potential class members were paid according to one of three different methods: (1) per piece; (2) hourly; and (3) salary. (*See* Dkt. 40 at 5). As such, Plaintiffs and the potential class

members are clearly not similarly situated, as each may have been subject to one or more of three wholly different pay schemes.

In an attempt to clear this hurdle, Plaintiffs seek to divvy up potential class members into three subclasses according to pay method. (*See* Dkt. 40 at 5-8). Yet this tactic merely serves to emphasize that Plaintiffs and the potential class members are not similarly situated and that collective action treatment is inappropriate. Moreover, it fails to account for the very real circumstance of Plaintiffs and potential class members who are members of ***all three subclasses***. Named Plaintiff Salvador Leon, for example, would be a member of all three subclasses, having worked as a welder (paid, at varying times, hourly and by piece and sometimes both in the same week) and as a lead hand (paid by salary). (*See* Dkt. 40-11 at 20-21 ¶¶ 11, 18). Far from promoting judicial economy, certification of the proposed class and subclasses would lead to a confusing mess of employees with different job duties, from multiple departments, subject to different pay methods, and with many who would be members of multiple subclasses.

Additionally, even within the subclasses, Plaintiffs and the potential class members differed according to the method of tracking work and, by extension, their pay. Plaintiffs expend significant effort outlining the use of the "ticket" system to determine the number of completed pieces of the "pay for performance" subclass members and the alleged deficiencies in that process leading to Defendant's alleged failure to pay Plaintiffs and potential subclass members for all time worked. (*See* Dkt. 40 at 6-7). Yet the declarations submitted with Plaintiffs' Motion make clear that not all potential members of the "pay for performance" subclass utilized the ticket system to track their performance and their corresponding pay. Opt-in Plaintiff Gelacio Juarez, for example, stated in his declaration that, although he was "primarily paid by production," he "did not track [his] production by entering ticket numbers into the computer; rather [he] would write down the

number of ramps [he] completed and provided them to [his] supervisor each week." (Dkt. 40-5 at

6 ¶ 6). Further, even those Plaintiffs and Opt-in Plaintiffs whose performance was tracked by ticket

indicate that the means used to track tickets varied. For example, Plaintiff Salvador Leon, stated

that "when [his] team began welding, [they] would enter the ticket number into the computer;

[they] would then enter the ticket number again when [they] finished the welding work associated

with the ticket." (Dkt. 40-11 at 20 ¶ 9). In the very next sentence, Leon notes that, at other times,

he "observed [his] supervisors manually track the tickets/trailers being worked." (Dkt. 40-11 at 20

¶ 9). This latter method comports with the experience of Saul Aguilar, another Opt-in Plaintiff in

the "pay for performance" subclass, who stated in his declaration that he "did not track [his]

production by entering numbers into the computer; rather [his] supervisor kept records of the

tickets [he] worked on." (Dkt. 40-7 at 13 ¶ 7). Thus, within just a single subclass, Plaintiffs have

identified multiple different methods by which their labor and the labor of potential class members

was tracked and upon which their compensation was based. Moreover, they have identified that

those methods were subject to inconsistent application. Such differences and inconsistencies

require precisely the fact-specific, individualized inquiries that militate against collective action

treatment, and the Court should therefore deny Plaintiffs' Motion.

### B. Plaintiffs' Motion Should Be Denied Because Plaintiffs Have Failed to Show that Plaintiffs and the Potential Class Members Were the Victims of a Single Decision, Policy, or Plan.

Leaving aside that Plaintiffs have not established that they and the potential class members

are similarly situated as to either job requirements or payment provisions, Plaintiffs are required

to "present some evidence beyond unsupported factual assertions of a single decision, policy, or

plan" of which they are each a victim. *See Hickson v. U.S. Postal Serv.*, No. 5:09-CV-00083, 2010

WL 3835887, at *7 (E.D. Tex. July 22, 2010), adopted, 2010 WL 3835885 (E.D. Tex. Sept. 28,

2010). That is, collective action treatment is only "appropriate where there is a 'demonstrated similarity among the individual situations . . . some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]'" *Id.* (quoting *Xavier v. Belfor USA Grp., Inc.*, 585 F. Supp. 2d 873, 877 (E.D. La. 2008)) (ellipsis and brackets in original). Plaintiffs, however, do not identify a "single decision, policy, or plan" by which they and the potential class members have allegedly been harmed. Rather, Plaintiffs outline at least four different practices which they allege violate the FLSA: (1) inaccurate time keeping; (2) exclusion of performance-based bonuses in calculating the regular rate for purposes of overtime compensation; (3) incorrect calculation of overtime compensation; and (4) failure to pay for waiting time. (*See* Dkt. 40 at 4-7). As courts in this District have made abundantly clear, actions involving several different alleged practices and the "endless variations" of employee experiences that accompany them create the "highly individualized" scenarios that are inappropriate for collective action treatment. *See Hickson*, 2010 WL 3835887, at *9. Any Plaintiff or potential class member could have been subject to any combination of the various alleged practices, and only an individualized inquiry into each such employee could reveal that combination.

The testimony of Opt-in Plaintiff Roberto Regalado Martinez is one of several examples that illustrate this issue that can be drawn just from the few employees who submitted declarations in support of Plaintiffs' Motion. Martinez stated in his declaration that he does "not believe that the number of hours were always accurate on [his] pay stubs," and he was thus subject to the inaccurate time keeping practices Plaintiffs allege. (Dkt. 40-10 at 6 ¶ 8). However, he also notes that he "did not recall receiving a bonus" and therefore was not a victim of the alleged exclusion of bonuses in calculating his regular rate. (Dkt. 40-10 at 6 ¶ 9). Further, because he was paid on

8

an hourly basis, Martinez was not subject to the alleged failure to pay waiting time. (*See* Dkt. 40-10 at 6 ¶ 5). Yet because he alleges that he "only received straight time for some hours worked over forty each workweek," he was presumably a victim of the alleged incorrect calculation of overtime pay. (Dkt. 40-10 at 7 ¶ 10). Martinez thus presents a situation where he was subject to only two of the four alleged FLSA violations. The potential for "endless variations" within the class and subclasses is readily apparent. Another employee may also have been subject to only two of the four alleged FLSA violation but only the two inapplicable to Martinez. Yet another employee may have been allegedly subject to all four. As the court astutely observed in *Hickson*, where the plaintiffs complained of at least five different practices:

> The purpose behind an FLSA collective action is to bring similarly-situated employees that were subjected to the same policy or practice together in one case because it is more efficient than having the claims tried separately. Plaintiffs' broad-ranging allegations, on their face, show this purpose would be thwarted if this case were conditionally certified.

*Hickson*, 2010 WL 3835887, at *9. As in *Hickson*, the number and variety of the practices alleged by Plaintiffs strongly indicate that the purpose of the FLSA collective action process "would be thwarted if this case were conditionally certified," and the Court should therefore deny Plaintiffs' Motion.

Furthermore, Plaintiffs have not submitted any evidence showing that the reason why Plaintiffs and the potential class members were allegedly not properly compensated was because of a company decision to improperly compensate Defendant's employees, rather than the result of human error or a rogue manager. *See Hickson*, 2010 WL 3835887, at *12 (holding that "Plaintiffs' evidence fails to provide a colorable basis that all the putative members of the collective action 'sustained injury from *one* unlawful policy" where the plaintiffs did not provide evidence that the FLSA violations were not "because of human error or a rogue manager" (emphasis in original) (quotation marks omitted)). Rather, Plaintiffs' Motion and the declarations filed in support are

replete with allegations of human error, computer malfunction, and rogue management, including that: (1) supervisors manipulated time entries, (2) supervisors failed to record time worked during lunches; and (3) the time clock often malfunctioned. (*See* Dkt. 40 at 4; Dkt. 40-6 at 12 ¶ 10; Dkt. 40-15 at 3 ¶ 7-8). In fact, Plaintiffs' Motion expressly provides that these three reasons—all of which are due to a human mistake, computer error, or a rogue supervisor—are the sole basis for the inaccurate time keeping Plaintiffs allege. (Dkt. 40 at 4). Thus, Plaintiffs' own Motion and supporting testimony identify multiple scenarios by which employees were allegedly improperly compensated but which are not the result of "a single, particular policy or practice that violates the FLSA," as required to conditionally certify a collective action. *Hickson*, 2010 WL 3835887, at \*9. As Plaintiffs have failed to identify a "single decision, policy, or plan" that binds Plaintiffs and the potential class members as common victims, the Court should deny Plaintiffs' Motion and refuse to conditionally certify the class.

### C.  Plaintiffs' Proposed Order and Class Notice Are Deficient and Improper.

"District courts have discretion in deciding whether and how to award timely, accurate, and informative notice to prospective plaintiffs." *Tolentino v. C & J Spec-Rent Servs. Inc.*, 716 F. Supp. 2d 642, 646 (S.D. Tex. 2010); *see also Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989). The notice must accomplish, at a minimum, two purposes: (1) the notice must inform potential class plaintiffs that they may contact an attorney to discuss the case; and (2) class members who choose to opt-in must return their opt-in form to the court. *See Tolentino*, 716 F. Supp. 2d at 646.  Further, the notice must appear neutral—not court-issued—and must accurately describe the claims and defenses raised in the lawsuit. *See Hoffman-La Roche*, 493 U.S. at 173-74.

Plaintiffs' proposed notice is deficient and improper because it: (1) directs potential class members to contact Plaintiffs' counsel and that they will be represented by Plaintiffs' counsel, *see Tolentino*, 716 F. Supp. 2d at 646 (providing that "the notice must inform potential class Plaintiffs that they may contact any attorney of their choosing to discuss the case"); (2) directs potential class members to return the completed opt-in forms to Plaintiffs' counsel, *see id.* (requiring that "class members who wish to opt-in must return their opt-in forms directly to the Court, not to counsel for Plaintiff"); and (3) does not warn potential class members that they may be required to participate in discovery, including responding to interrogatories, providing relevant documents, appearing for depositions, and testifying in court, *see Reyes v. Bona 1372, Inc.*, No.  1:17-CV-00016, 2017 WL 5148367, at *10 (E.D. Tex. Oct. 17, 2017), adopted, 2017 WL 5147182 (E.D. Tex. Nov. 6, 2017) (requiring the notice to inform "putative class members that they may be required to participate in discovery, including responding to written questions, appearing for depositions, and/or testifying in court"). If the Court conditionally certifies the class and issues notice, the notice provided to potential class members should be revised to provide that potential class members may contact an attorney of their choosing, that they should return the completed opt-in forms directly to the Court, and that they may be required to participate in discovery.

Additionally, several of Plaintiffs' requests relating to the service of notice place an unreasonable burden on Defendant or unnecessarily invade the privacy of Defendant's current and former employees. Plaintiffs' proposed order requires Defendant to produce the following information "in a usable electronic format" within seven days of the date of the order: (1) full names; (2) last known addresses; (3) last known residential phone numbers; (4) last known cell phone numbers; (5) e-mail addresses; (6) last four digits of Social Security numbers; (7) dates of birth; and (8) dates of employment. (Dkt. 40 at 13-14). First, Plaintiffs have not established any

reason for seeking the phone numbers of potential class members, as Plaintiffs do not propose to contact potential class members by phone, nor would it be proper for Plaintiffs to do so. Second, Plaintiffs' request for potential class members' Social Security numbers, phone numbers, and dates of birth unnecessarily invades the privacy of Defendant's current and former employees, and Plaintiffs identify no legitimate need for such information. Finally, the seven-day timeline proposed by Plaintiffs for the provision of this information is far too brief given the number of potential class members and the amount of information requested. Therefore, if the Court certifies the collective action, Defendant requests that the Court deny Plaintiffs' request for the Social Security numbers, phone numbers, and dates of birth of potential class members and allow Defendant at least fourteen days to provide the remaining information.

### D. Plaintiffs' Proposed Consent to Become Party Plaintiff Is Improper.

Plaintiffs' proposed consent to become party plaintiff form is improper, as it states that "[f]or purposes of pursuing my FLSA claims against Defendant, I choose to be represented by Baron & Budd, P.C. and other attorneys with whom they may associate." (Dkt. 40-22 at 2). Courts routinely reject consent forms that fail to allow potential class members to select their own counsel. *See, e.g.*, *Ratliff v. Pason Sys. USA Corp.*, 196 F. Supp. 3d 699, 701-03 (S.D. Tex. 2016) (requiring that the consent form be modified to allow potential class members to retain their own counsel and opt-in to the collective action). Therefore, in the event the Court conditionally certifies the collective action, the proposed consent should be altered to allow potential class members to be represented by counsel of their choosing.

## V.    CONCLUSION

Plaintiffs' Motion should be denied because Plaintiffs have failed to show that: (1) they and the potential class members are similarly situated as to job responsibilities; (2) they and the potential class members are similarly situated as to payment provisions; and (3) Plaintiffs and the

12

potential class members are bound together as victims of a single decision, policy, or plan that violates the FLSA. Further, Plaintiffs' proposed order, notice, and consent are deficient and improper.

WHEREFORE, PREMISES CONSIDERED, Defendant Load Trail, LLC respectfully requests that the Court deny Plaintiffs' Opposed Motion to Conditionally Certify a Collective Action and to Issue Notice, along with any such other and further relief to which Defendant may be justly entitled.

Respectfully submitted,

By: _/s/ Ruth Ann Daniels_

RUTH ANN DANIELS
Texas Bar No. 15109200
rdaniels@graygreed.com
JACOB A. LEWIS
Texas Bar No. 24087924
jlewis@grayreed.com

GRAY REED & MCGRAW LLP
4600 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201
(214) 954-4135 - Telephone
(214) 953-1332 – Facsimile

**ATTORNEYS FOR DEFENDANT
LOAD TRAIL, LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 17, 2019, a true and correct copy of the foregoing document was served upon Plaintiff's counsel of record via the Court's ECF system as follows:

Allen R. Vaught
Vaught Firm, LLC
6122 Palo Pinto Ave.
Dallas, TX 75214
allen@vaughtfirm.com

Diana-Linh My Hoang Le
Le & Le PLLC
206 Sunset Avenue
Dallas, TX 75208
diana@leandlelaw.com

_/s/ Ruth Ann Daniels_
Ruth Ann Daniels