# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| JACINTO RAMIREZ, LUIS MORALES, ORLANDO PIEDRA FLORES, AND SALVADOR LEON, On Behalf of Themselves and All Others Similarly Situated,<br>    *Plaintiffs*,<br><br>v.<br><br>LOAD TRAIL, LLC,<br>    *Defendant*. | §§§§§§§§§§§§ | Civil Action No. 4:18-cv-00756<br>Judge Mazzant |

## **MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiffs' Opposed Motion to Conditionally Certify a Collective Action and to Issue Notice with Brief in Support (Dkt. #40). Having considered the Motion, Response, and Reply, the Court finds that the Motion should be **GRANTED**.

### BACKGROUND

**I.    Factual Summary**

Plaintiffs Jacinto Ramirez, Luis Morales, Orlando Piedra Flores, and Salvador Leon ("Plaintiffs") are current or former employees of Defendant Load Trail, LLC ("Defendant"). Plaintiffs and the putative collective action members they represent allege that they have regularly worked in excess of forty (40) hours per workweek for Defendant but have not received all overtime premium compensation owed them under the Fair Labor Standards Act ("FLSA"). Defendant is in the trailer manufacturing business, and Plaintiffs and putative collective action members work in various departments of Defendant's business—specifically, the fabrication, welding, and finishing departments.

In particular, Plaintiffs and putative collective action members are or were, among other things, welders, painters, parts distributors, robot machine operators, plasma cutters, personnel responsible for transporting inventory, and finishing department personnel responsible for installation services.

Plaintiffs claim that all of their jobs, along with those worked by the putative collective action members, involved closely related manual labor tasks. Plaintiffs' motion for conditional certification indicates that those working in the fabrication department cut and bent the raw materials to required specification for welding; those in the welding department used those materials to build the trailer chassis; and those in the finishing department completed the wiring, flooring, installation, sandblasting, and painting of the trailers. Moreover, some were responsible for transporting inventory and performing various control tasks, and others assisted the department supervisors with starting and operating machinery, replacing broken tools, and retrieving necessary materials.

Defendant required Plaintiffs and putative collective action members to clock in and out of each shift by inserting their barcoded employee ID card into a computer. The computer system allegedly often malfunctioned, however, meaning the timekeeping was at times handled and subject to alteration by Defendant's supervisors. Thus, Plaintiffs claim, the hours reported on employees' paystubs were frequently inaccurate and did not capture the full amount of time actually worked. Plaintiffs maintain that these and other similar timekeeping practices caused them and putative collective action members not to be paid proper overtime for all hours actually worked over forty (40).

Defendant apparently paid Plaintiffs using three different compensation methods: (1) pay for performance; (2) non-pay for performance; and (3) salary pay for those assisting the

supervisors. Based on these three pay "schemes," Plaintiffs ask the Court to certify three subclasses as follows:

1. Pay for Performance: All current and/or former Load Trail (1) non-supervisor employees (2) who work(ed) in the fabrication department, welding department, finishing department, or in the warehouse handling inventory (3) who perform(ed) manual labor tasks (4) that are/were in a "pay for performance" position (aka "paid by production" or "paid by piece rate"), (5) who are/were employed between July 22, 2016 and present (6) and work(ed) in excess of 40 hours in a given workweek, but were not paid time and one-half their regular rate of pay for all hours worked over 40 in each such workweek.

2. Non-Pay for Performance: All current and/or former Load Trail (1) non-supervisor employees (2) who work(ed) in the fabrication department, welding department, finishing department, or in the warehouse handling inventory (3) who perform(ed) manual labor tasks (4) that are/were paid on an hourly basis (5) that are/were not in "pay for performance" positions (aka "paid by production" or "paid by piece rate"), (6) who are/were employed between July 22, 2016 and present (7) and work(ed) in excess of 40 hours in a given workweek, but were not paid time and one-half their regular rate of pay for all hours worked over 40 in each such workweek.

3. Salaried Assistants: All current and/or former Load Trail employees (1) whose primary job duties are/were to assist the supervisors (aka "lead hands") in the fabrication department, finishing department, welding department or in the warehouse handling inventory, (2) that are/were paid on a salary basis (3) who are/were employed between July 22, 2016 and present (4) and worked in excess of 40 hours in a given workweek, but were not paid time and one-half their regular rate of pay for all hours worked over 40 in each such workweek.

Plaintiffs and putative collective action members claim that they worked the same basic kinds of tasks so as to make them "similarly situated" and that Defendant's compensation schemes were part of a central practice and policy by Defendant to underpay overtime wages owed to its workforce. Defendant argues that that the employees in question were not similarly situated because they had varying job titles and responsibilities and were paid in different ways. Moreover, Defendant maintains that no one practice, policy, or plan existed to improperly compensate its workforce.

## II. Procedural History

On July 12, 2019, Plaintiffs moved to Conditionally Certify a Collective Action (Dkt. #40). On September 17, 2019, Defendant filed a Response (Dkt. #46) and objected to Plaintiffs' evidence (Dkt. #47). On September 24, 2019, Plaintiffs filed a Reply (Dkt. #48) and responded to Defendant's evidentiary objections (Dkt. #49).

## LEGAL STANDARD

The FLSA gives employees the right to bring an action on behalf of themselves, as well as "other employees similarly situated." 29 U.S.C. § 216(b). "Under § 216(b), district courts have the discretionary power to conditionally certify collective actions and authorize notice to potential class members." *Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 994 (E.D. Tex. 2011). While the Fifth Circuit has not specifically addressed the meaning of "similarly situated" in this context, "[t]wo approaches are used by courts to determine whether collective treatment under § 216(b) is appropriate: (1) the two-stage class certification set forth in *Lusardi v. Xerox, Corp.*, 118 F.R.D. 351 (D. N.J. 1987); and (2) the 'Spurious Class Action' method outlined in *Shushan v. Univ. of Colorado*, 132 F.R.D. 263 (D. Colo. 1990)." *Cripe v. Denison Glass Mirror, Inc.*, No. 4:11-cv-224, 2012 WL 947455, at *3 (E.D. Tex. Jan 27, 2012) *report and recommendation adopted*, 2012 WL 947362 (E.D. Tex. Mar. 20, 2012); *Villatoro v. Kim Son Rest, L.P.*, 286 F. Supp. 2d 807, 809 (S.D. Tex. 2003). "The *Lusardi* two-stage approach is the prevailing standard among federal courts and is the standard most frequently used by this court." *Tice*, 826 F. Supp. 2d at 994 (citations omitted). As such, the Court will apply the *Lusardi* approach in this case.

Under *Lusardi*, "certification for a collective action under § 216(b) is divided into two stages: (1) the notice stage; and (2) the merits stage." *Id.* "At the notice stage, the district court

makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members." *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). Because the Court has minimal evidence before it at this stage, "the determination is made using a fairly lenient standard requiring nothing more than substantial allegations that the putative class members were victims of a single decision, policy or plan." *Tice*, 826 F. Supp. 2d at 995. "Notice is appropriate if the court concludes that there is 'some factual nexus which binds the named plaintiffs and potential class members together as victims of a particular alleged [policy or practice].'" *Allen v. McWane, Inc.*, No. 2:06-cv-158 (TJW), 2006 WL 3246531, at *2 (E.D. Tex. Nov. 7, 2006). "If the first step [of the *Lusardi* approach] is satisfied, the court conditionally certifies a class; and the action proceeds as a collective action during discovery." *Sedtal v. Genuine Parts Co.*, No. 1:08-cv-413-TH, 2009 WL 2216593, at *3 (E.D. Tex. July 23, 2009).

## ANALYSIS

### I. Conditional Certification

This case is in the first stage under *Lusardi*. At this stage, "Plaintiff bears the burden of presenting preliminary facts to show that there is a similarly situated group of potential plaintiffs." *Cripe*, 2012 WL 947455, at *2. This does not mean that their positions must be identical, as "the court need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated [under § 216(b)]." *Tice*, 826 F. Supp. 2d at 995–96. Rather, "the relevant inquiry is whether the potential class members performed the same basic tasks and were subject to the same pay practices." *Id.* at 996. "[P]laintiff[s] need only show that their positions are similar to the potential plaintiffs[.]" *Id.* at 995.

Defendant argues that Plaintiffs and the potential class members are not similarly situated because they had differing job titles and job requirements (Dkt. #46). The Court finds that Plaintiffs have presented sufficient evidence at the notice stage that the positions of the potential class members are similar to the Plaintiffs' through an alleged pattern of wage violations. *Miranda v. Mahard Egg Farm, Inc.*, No. 4:15-cv-406, 2016 WL 1704861, at *3 (E.D. Tex. Apr. 28, 2016); *see Roussell v. Brinker Intern. In.*, 441 Fed. App'x. 222, 226 (5th Cir. 2011) (holding that, though there were distinctions among employees, certification was not an abuse of discretion where the claims could be considered "at a higher level of abstraction," and deposition testimony was indicative of a common pattern). To be sure, Plaintiffs and the potential class members worked in a few different departments for Defendant, including the fabrication department, welding department, and finishing department. However, "[t]he court need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated." *Tice*, 826 F. Supp. 2d at 995–96. By alleging that the different departments all involve closely related manual labor tasks and positions that appear to work hand-in-hand to produce a final product, Plaintiffs have met the lenient standard of the *Lusardi* notice stage.

Defendant further argues that Plaintiffs and the potential class members are not similarly situated and were not victims of a single policy or practice of intentional underpayment of overtime wages because they were compensated in three different ways. However, the Court is satisfied that Plaintiffs have adequately alleged that they were underpaid overtime wages by these three practices. "The denial of overtime wages itself is the alleged policy and plan in place" by Defendant; that there were three "different *methods* of accomplishing the denial of overtime wages" is insufficient to preclude conditional certification at this stage. *Reyes v. Bona 1372, Inc.*, No. 1:17-cv-00016, 2017 WL 5148367, at *8 (E.D. Tex. Oct. 17, 2017), *report and*

6

*recommendation adopted*, 2017 WL 5147182 (E.D. Tex. Nov. 6, 2017). Thus, the Court finds that Plaintiffs have adequately alleged that they and the potential class members were victims of a "single decision, policy, or plan to deny overtime wages." *Id.*

Accordingly, the Court finds that Plaintiffs have come forward with sufficient evidence to warrant conditional certification of a collective action and notice to potential class members. Defendant will have the opportunity at stage two of *Lusardi*—the merits stage—to move to "decertify" the collective action if, after discovery, it can show that the class members are not similarly situated.

The Court notes as a final matter that Plaintiffs have asked for a three-year statute of limitations on the ground that they alleged Defendant's conduct was willful. Generally, the statute of limitations on FLSA claims is two years. 29 U.S.C. § 255(a). However, the statute provides a three-year statute of limitations for willful violations. *Id.* Under the FLSA, a violation is "willful" if the employer either "knew or showed reckless disregard for . . . whether its conduct was prohibited by the statute." *Singer v. City of Waco*, 324 F.3d 813, 821 (5th Cir. 2003). The limitations period continues to run as to all similarly situated employees until they opt into the collective action. *Hayes v. Laroy Thomas, Inc.*, No. 5:05-cv-227, 2006 WL 1004991, *7 (E.D. Tex. Apr. 18, 2006).

The Court finds that Notice should be provided within the longer three-year statute of limitations. Plaintiffs alleged that Defendant's violation was willful, and the question of willfulness is a question of fact to be decided later in this case. *Tice*, 826 F. Supp. 2d at 996 n.3 (citing *Cash v. Conn Appliances, Inc.*, 2 F. Supp. 2d 884, 897 (E.D. Tex. 1997)). The Court will accordingly not determine the factual question whether Defendant acted willfully until later in this case when discovery has been completed.

**II.     Notice and Consent**

Defendant argues that Plaintiffs' proposed notice is deficient and improper for the following reasons:

> (1) it directs potential class members to contact Plaintiffs' counsel and that they will be represented by Plaintiffs' counsel; (2) it directs potential class members to return the completed opt-in forms to Plaintiffs' counsel; and (3) it does not warn potential class members that they may be required to participate in discovery, including responding to interrogatories, providing relevant documents, appearing for depositions, and testifying in court.

(Dkt. #46) (internal citations and parentheticals omitted).

Additionally, Defendant maintains that several of Plaintiffs' requests are unduly burdensome. In particular, Defendant claims that it should not be required to produce the phone numbers, Social Security numbers, or dates of birth of the potential class members. It further argues that it should have at least fourteen (14) days, rather than seven (7) days as requested by Plaintiffs, to produce the following information: class members' full names, last known addresses, email addresses, and dates of employment.

First, Plaintiffs agreed in their Reply to revise section 5 of the proposed Notice (Dkt. #40-21) to provide that putative class members may retain counsel of their own if they decide to pursue their claims individually by not opting in (Dkt. #48). After consideration, the Court finds that Plaintiffs must revise the Notice to contain language providing that putative class members are permitted to contact an attorney of their choosing if they choose to proceed individually. *See Tolentino v. C & J Spec-Rent Servs. Inc.*, 716 F. Supp. 2d 642, 655 (S.D. Tex. 2010). However, to the extent the Notice informs putative class members that they may retain their own counsel if they choose to proceed individually, the Court sees no issue with the Notice providing that by opting *in*, class members are designating Baron & Budd, P.C. and its attorneys to represent them in the action. *Wingo v. Martin Transp., Inc.*, No. 2:18-cv-00141-JRG, 2018 WL 6334312, at *4

(E.D. Tex. Dec. 5, 2018) (allowing the Notice to contain language informing the prospective class members that by opting in, they were designating a specific law firm and its attorneys as their agents in the collective action).

Second, the Court finds no reason why it should require the putative class members to submit their completed opt-in forms to the Court rather than to Plaintiffs' counsel. As set forth in the following Order, the Court will require any Notice and Consent Forms returned to Plaintiffs' counsel by a putative class member to be filed with the Court within a specified number of days. Accordingly, the Court will not require the putative class members to submit their Forms directly to the Court.

Third, the Court will not require the Notice to provide language informing putative class members that they may be required to answer discovery and testify at depositions and in court. Such a requirement here may unnecessarily risk having a "chilling effect on the prospective class members." *Wingo*, 2018 WL 6334312, at *4.

Finally, the Court agrees with Defendant that it should have fourteen (14) days to provide the requested information. Plaintiffs provide no reason in their Reply for why a seven (7) day rather than a fourteen (14) day timeline would advance their interests in this action. Thus, given that there may be a large number of individuals opting in, the Court will allow Defendant fourteen (14) days to provide the requested information. Moreover, consistent with the *Tice* decision, the Court here will require production of "the names, job titles, addresses, telephone numbers, Social Security numbers, and email addresses" of the prospective class members.

### III. Defendant's Objections to Plaintiffs' Exhibits

Plaintiffs submit thirteen (13) declarations in support of their motion for conditional certification (Dkt. #40-1–13; Dkt. #40-15). Defendant objects to the statements provided by

Plaintiffs on the ground that they are "not based on the declarants' knowledge but rather are replete with improper testimony that lacks foundation, constitutes hearsay, or is pure speculation" (Dkt. #47).

While the Fifth Circuit has not specifically addressed the issue of whether the hearsay standard under Federal Rule of Evidence 802 should apply to a Plaintiff's declarations in a conditional certification context, courts within the Fifth Circuit have allowed consideration, at the notice stage, of declarations challenged as being inadmissible at trial. *See Lee v. Metrocare Services*, 980 F. Supp. 2d 754, 761 (N.D. Tex. 2013) (collecting cases).

Moreover, the material in the collected declarations is within the personal knowledge of the declarants. "Personal knowledge" includes inferences and opinions "so long as they are grounded in personal observation and experience." *United States v. Cantu*, 167 F.3d 198, 204 (5th Cir. 1999). Luis Morales, for example, states that he bases his declaration on personal knowledge (Dkt. #40-3). Morales makes statements and inferences regarding other workers he has knowledge of as his position allowed him to interact with and observe other workers (Dkt. #40-3, at ¶¶ 4, 7, 13). Additional declarations by other putative class members describe similar personal interactions with other workers and supervisors. The Court accordingly finds that the declarations are adequately based on "personal knowledge" and need not be disregarded at this stage. The Court therefore overrules Defendant's objections to the evidence and declarations submitted in support of Plaintiffs' Opposed Motion to Conditionally Certify a Collective Action (Dkt. #47).

## CONCLUSION

For these reasons, it is **ORDERED** that Plaintiffs' Motion for Conditional Certification (Dkt. #40) is hereby **GRANTED**.

It is further **ORDERED** that the Court conditionally certifies the class, containing three subclasses, described as follows:

1. Pay for Performance: All current and/or former Load Trail (1) non-supervisor employees (2) who work(ed) in the fabrication department, welding department, finishing department, or in the warehouse handling inventory (3) who perform(ed) manual labor tasks (4) that are/were in a "pay for performance" position (aka "paid by production" or "paid by piece rate"), (5) who are/were employed between July 22, 2016 and present (6) and work(ed) in excess of 40 hours in a given workweek, but were not paid time and one-half their regular rate of pay for all hours worked over 40 in each such workweek.

2. Non-Pay for Performance: All current and/or former Load Trail (1) non-supervisor employees (2) who work(ed) in the fabrication department, welding department, finishing department, or in the warehouse handling inventory (3) who perform(ed) manual labor tasks (4) that are/were paid on an hourly basis (5) that are/were not in "pay for performance" positions (aka "paid by production" or "paid by piece rate"), (6) who are/were employed between July 22, 2016 and present (7) and work(ed) in excess of 40 hours in a given workweek, but were not paid time and one-half their regular rate of pay for all hours worked over 40 in each such workweek.

3. Salaried Assistants: All current and/or former Load Trail employees (1) whose primary job duties are/were to assist the supervisors (aka "lead hands") in the fabrication department, finishing department, welding department or in the warehouse handling inventory, (2) that are/were paid on a salary basis (3) who are/were employed between July 22, 2016 and present (4) and worked in excess of 40 hours in a given workweek, but were not paid time and one-half their regular rate of pay for all hours worked over 40 in each such workweek.

It is further **ORDERED** that the Notice (Dkt. #40-21) and Consent to Join Form (Dkt. #40-22) presented to the Court are conditionally approved, subject to Plaintiffs' insertion of the appropriate dates and their compliance with the Court's instructions as provided in this Order.

It is further **ORDERED** that Defendant produce the names, job titles, addresses, telephone numbers, Social Security numbers, and email addresses of the prospective class members. Defendant shall provide the information in an electronic format within fourteen (14) days of the entry of this Order. Plaintiffs' Counsel shall send the Notice and Consent Forms to the prospective class members within seven (7) days after Defendant provides the prospective class members' information to Plaintiffs' counsel. The Court authorizes Plaintiffs to immediately issue the Notice

and Consent Forms to those individuals whose names are being provided as required by this Order. Plaintiffs shall issue the Notice and Consent Forms by U.S. mail and email. Plaintiffs may provide a self-addressed, postage paid return envelope. Plaintiffs shall bear the cost of issuing the Notice and Consent Forms and any reminder notice.

The prospective class members shall be provided ninety (90) days after the date the Notice and Consent Forms are mailed (the "Opt-In Period") to file a Consent Form opting-in to this litigation, unless the parties agree to permit late filings. Any re-mailing of the original notice and any reminder notices shall not extend this deadline. Plaintiffs shall inform opposing counsel as to the date on which the Notice forms were sent to the prospective class members. Plaintiffs' counsel may send a reminder notice thirty (30) days before the expiration of the Opt-In Period, provided the parties agree upon the text of the reminder.

Any Notice and Consent Forms returned to Plaintiffs' counsel by the prospective class members shall be filed within sixty (60) days of the date of initial mailing of the Notice. If such list is sent piecemeal, the sixty (60) days shall begin to run on the date that the last address or other identifying information is sent by Defendant to Plaintiffs' counsel.

**IT IS SO ORDERED.**

**SIGNED this 15th day of October, 2019.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE